UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


WILLIAM F. JORDAN AND
RITA J. JORDAN                                               PLAINTIFFS


VS.                                    CIVIL ACTION NO. 3:14CV503TSL-JCG


NATIONWIDE TRUSTEE SERVICES, INC.;
CHASE HOME FINANCE LLC A/K/A JPMORGAN
CHASE BANK, N.A.; JPMORGAN CHASE BANK
NATIONAL ASSOCIATION A/K/A JPMORGAN CHASE
BANK, N.A.; AAMES FUNDING CORPORATION
D/B/A AAMES HOME LOAN; DEUTSCHE BANK
NATIONAL TRUST COMPANY, A NATIONAL
CORPORATION AS TRUSTEE FOR MORGAN STANLEY
ABS CAPITAL 1 INC. TRUST 2003-HE3 MORTGAGE
PASS THROUGH CERTIFICATE SERIES 200 2003-HE3;
MORGAN STANLEY; MORGAN STANLEY ABS CAPITAL 1
INC. TRUST 2003-HE3 MORTGAGE PASS THROUGH
CERTIFICATES SERVICES 200-2003-HE3; PROMMIS
SOLUTIONS, LLC; STEPHANIE C. JOHNSON; JOHNSON
& FREEDMAN, LLC; ELIZABETH JOLLY; MICHAEL IOCOVO;
RICHETTA MILTON; LAQUENIA TREZEVANT; ADRIENE
SINGLETON; AND JOHN DOES 1-20                                DEFENDANTS


MEMORANDUM OPINION AND ORDER

       This cause is before the court on the motion of defendants

JPMorgan Chase Bank, N.A., JP Morgan Chase Bank, N.A. s/b/m to

Chase Home Finance, LLC (Chase) and Deutsche Bank National Trust

Company, as Trustee for Morgan Stanley ABS Capital 1 Inc. Trust

2003-HE3 Mortgage Pass Through Certificate Series 200 2003-HE3,

for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  Plaintiffs William F. Jordan and Rita J. Jordan

have not responded to the motion and the time for doing so has

passed.  The court, having considered the memorandum of
authorities submitted by the movants in support of their motion,
concludes that the motion is well taken and should be granted.

In 2003, plaintiffs refinanced their Jackson, Mississippi
home, obtaining a loan for $334,560 from Aames Funding Corporation
d/b/a Aames Home Loan.  According to their complaint in this
cause, beginning in March 2009, after they fell behind in their
mortgage payments, they received solicitations from Chase Home
Finance LLC, which serviced the loan, telling them their account
"may be eligible for modification" and advising that "Changes to
Your Chase Mortgage under the new federal loan modification
program could help you avoid foreclosure."  In April 2009,
plaintiffs submitted to Chase a request for loan modification with
supporting documentation.  From time to time over the next year or
so, plaintiffs provided additional information and documentation
requested by Chase for consideration of their loan modification
request.  And throughout most of this time, from June 2009 through
June 2010, they sent monthly payments to Chase of $2,573 via
Western Union for their mortgage payment.  However, on September
2, 2010, plaintiffs received a notice from Nationwide Trustee
Services, Inc., substituted Trustee on the Deed of Trust, that a
payment of $77,626.47 was required to reinstate their loan.  This
was followed by a notice dated November 3, 2010, reflecting a
payoff figure of $366,000.  Shortly thereafter, on November 16,

2010, plaintiffs were informed by Chase that their loan was now owned by Deutsche Bank National Trust Company, which did not allow loan modifications under any circumstances.  Plaintiffs were further told they would have to pay a "huge lump sum payment" ($77,626.47) to avoid foreclosure.  Within a few weeks of that notice, Nationwide issued a notice of foreclosure sale scheduled for January 13, 2011, following which it commenced publication of notice of foreclosure in the local newspaper.

On the day of the scheduled foreclosure, plaintiffs filed suit against Nationwide in the Chancery Court of Hinds County, Mississippi, seeking to enjoin the foreclosure based on allegations that they were not given proper notice and that they were entitled to an accounting as they disputed the reinstatement figure provided by Nationwide because, *inter alia*, it did not credit the payments they had made during the year their modification request was ostensibly being processed.  The same day, the chancellor granted their petition without notice, ordering Nationwide to "cease foreclosure proceedings immediately."  Two weeks later, Nationwide again commenced foreclosure proceedings.  Following a March 3, 2011 publication of notice of sale, counsel for plaintiff and for Nationwide discussed an accounting of the reinstatement amount being demanded of plaintiffs.  Plaintiffs allege that defendants, without providing them a full accounting, yet again began foreclosure proceedings in

June 2011 for a foreclosure sale scheduled for July 14, 2011.  On

July 13, 2011, plaintiffs again filed a petition to enjoin

foreclosure; and again, the chancery court issued an injunction

without notice ordering Nationwide to "cease all contact with

Plaintiffs ... until the requested itemized accounting has been

furnished to Plaintiff's counsel and/or all of the matter(s) of

the case are finally adjudicated."  Thereafter, on July 20, an

agreed order was entered in which Nationwide agreed "to postpone

the foreclosure of the property ... until a complete and itemized

accounting has been produced to the Plaintiffs and/or the matter

is resolved."

According to plaintiffs' amended complaint herein, in April

2013, nearly three years after the agreed order was entered, Chase

sent them an Accelerated Warning/Notice of Intent to Foreclose,

threatening foreclosure if plaintiffs did not pay $187,271.56 on

or before May 27, 2014.[1]  In response, on May 27, 2014, plaintiffs

---

[1]     This figure included $180,271.56 in arrears on their
monthly payment (including principal, interest and escrow) and
$6,930.91 in "other fees and advances".  At the time this notice
was sent, plaintiffs had made no payment on their mortgage loan
for more than four years, since July 2010.  Plaintiffs allege that
the notice incorrectly recited that they had "failed to pay the
required monthly installments commencing with the payment due
07/01/2009."  They state that, in fact, they made thirteen
payments from and after July 2009.  Plaintiffs allege that the
only reason they stopped making mortgage payments after July 2010
was because Chase rejected their then-most recent payment and
advised that it would not accept any further payments from them.

filed an amended complaint in the state chancery court action[2]

adding a number of additional defendants, including Chase and

Deustche Bank.  The amended complaint included a petition to hold

Nationwide and Chase in contempt for alleged violation of the

chancery court's July 2011 orders, and included the following

counts: quiet title; fraudulent misrepresentation and/or omission;

constructive fraud; fraudulent inducement; fraudulent deceit;

cancellation and removal of clouds from titles; fraudulent

conveyance; rescission and cancellation; injunction; accounting;

unjust enrichment; breach of implied covenants of good faith and

fair dealing; negligence; violations of Mississippi Consumer Loan

Broker Act and Mortgage Consumer Protection Act; and infliction of

emotional distress.  Chase, joined by the then-served diverse

defendants, removed the case to this court on the basis of

diversity jurisdiction.  Chase and Deutsche Bank filed their

answers to the amended complaint and have now moved for judgment

on the pleadings, contending that each of plaintiffs' putative

claims for relief fails as a matter of law for one or more

reasons.

---

[2]     Defendants assert in their motion that plaintiffs filed
their amended complaint in response to a *sua sponte* motion by the
chancery clerk to dismiss the chancery action for want of
prosecution.  The court is unsure whether the amended complaint
was filed because of the chancery clerk's motion or Chase's notice
of intent to foreclose or both.

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007) (citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  All well-pleaded facts are accepted as true and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Here, having considered the movants' arguments, the court concludes that dismissal of plaintiffs' claims against them is in order for the reasons that follow.

Contempt:

The July 13, 2011 and July 20, 2011 chancery court orders that are the subject of plaintiffs' petition for contempt prohibited *Nationwide* from instituting foreclosure proceedings. Chase cannot be found in contempt for violation of those orders as Chase was not a party to the action when the court's orders were entered and the orders do not apply to Chase.

Quiet Title/Remove Cloud:

Plaintiffs allege in count one of their complaint that since "the Defendants are not in possession of all of the original documents related to the debt allegedly owed to them by the Jordans," then defendants are not entitled to assert their rights to collect the debt and the court should find that the debt is in

effect null and void.  However, the "show-me-the-note theory has

been 'repeatedly discredited' by the district courts in

Mississippi."  Brisby v. Moynihan, No. 3:14cv47-DPJ-FKB, 2014 WL

2940874, at *3 (S.D. Miss. June 30, 2014) (citations omitted); see

also Casterline v. OneWest Bank, F.S.B., 537 Fed. App'x 314, 316

(5th Cir. 2013) (applying Texas law to reject same theory).

     In count five, plaintiffs allege that the note and deed of

trust securing the note, and defendants' foreclosure notice,

constitute clouds on their title, and they contend that as a

result of defendants' fraud, "[i]t would be inequitable and unjust

to require [them] to give up their title since the Defendants

accepted [their] title as good and complete at the time the

Defendants fraudulently obtained [plaintiffs'] entry into the

modification program."  In other words, plaintiffs assert that the

court should vest title in them based on defendants' alleged

fraud.  While the court concludes *infra* that plaintiffs have

failed to state a viable claim for fraud, even had they done so,

the court would find they have not stated a viable claim for

removal of cloud and to quiet title.  In Greene v. Indymac Bank,

FSB, No. 3:12cv347-DPJ-FKB, 2012 WL 5414097 (S.D. Miss. Nov. 6,

2012), the court concluded that the plaintiffs' quiet title claim

failed because the plaintiffs did not include in their complaint

the deraignment of title required by section 11-17-35 of the

Mississippi Code, which states:

> In bills to confirm title to real estate, and to cancel and remove clouds therefrom, the complainant must set forth in plain and concise language the deraignment of his title.  If title has passed out of the sovereign more than seventy-five (75) years prior to the filing of the [Complaint], then the deraignment shall be sufficient if it show title out of the sovereign and a deraignment of title for not less than sixty (60) years prior to the filing of the [Complaint].  A mere statement therein that complainant is the real owner of the land shall be insufficient, unless good and valid reason be given why he does not deraign his title.

Id. at 4-5 (quoting Miss. Code Ann. § 11-17-35).  See also 7 G. Ogletree & D. Rueff, Encyclopedia of Mississippi Law § 60:117 ("This generally requires proof that title passed from the sovereign by reference to the patent and a deraignment of title for at least 60 years prior to the filing of the complaint.") (cited in Greene).  As in Greene,  "[p]laintiffs' amended complaint contains nothing more than '[a] mere statement ... that [Plaintiffs are] the real owner[s] of the land,' which is 'insufficient' under section 11-17-35."  Id. at 5.  "For these reasons, dismissal of the quiet title claim is appropriate."  Id.

Fraud-Based Claims:[3]

Federal Rule of Civil Procedure 9(b) requires a party pleading fraud to "state with particularity the circumstances

---

[3]     Plaintiffs have asserted fraud-based claims in several counts, including their counts for fraudulent misrepresentation and/or omission; constructive fraud; and fraudulent deceit.  All these claims are based on the same basic allegations, namely, that defendants misled and deceived them into entering into the loan modification program, either through affirmative misrepresentation or nondisclosure of material facts.

constituting fraud...." Fed. R. Civ. P. 9(b). "At a minimum,
Rule 9(b) requires allegations of the particulars of 'time, place,
and contents of the false representations, as well as the identity
of the person making the representation and what he obtained
thereby.'" Tel-Phonic Servs., Inc. v. TBS Intern., Inc., 975 F.2d
1134, 1139 (5th Cir. 1992) (quoting 5 C. Wright & A. Miller,
Federal Practice and Procedure § 1297, at 590 (1990)). See also
Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450, 453 (5th
Cir. 2005) (stating that Rule 9(b) requires that plaintiffs plead
enough facts to illustrate "the 'who, what, when, where, and how'
of the alleged fraud.") (quoting United States ex rel. Thompson v.
Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)).
To state a claim for fraud under Mississippi law, a plaintiff must
plead with factual particularity the following nine elements:

> (1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its falsity
> or ignorance of its truth; (5) his intent that it should
> be acted upon by the person and in the manner reasonably
> contemplated; (6) the hearer's ignorance of its falsity;
> (7) his reliance on the truth; (8) his right to rely
> thereon; [and] (9) his consequent proximate injury.

Smith v. Union Nat. Life Ins. Co., 187 F. Supp. 2d 635, 650 (S.D.
Miss. 2001) (citation omitted). Plaintiffs have not alleged
sufficient facts to state a claim for fraud with particularity.

Plaintiffs broadly allege that they were "fraudulently
solicited ... to apply for a loan modification." Yet the only
representation they have identified with specificity is a

solicitation by Chase in April 2010 which stated that "your

account *may be* eligible for modification" and that the loan

modification program "*could help* you avoid foreclosure."

(Emphasis added).  However, general statements such as these are

not the kinds of statements of presently existing fact that could

support a claim for fraud.  See Spragins v. Sunburst Bank, 605 So.

2d 777, 781 (Miss. 1992) (explaining that "[f]raudulent

misrepresentation must be related to past or presently existing

facts").

     Plaintiffs further assert a claim of fraudulent omission

based on an allegation that defendants failed to disclose to them

that if their request for loan modification were ultimately

rejected, they might be demanded to pay a huge sum on short notice

in order to avoid foreclosure.  "In Mississippi, a claim of fraud

by omission arises only where the defendant had a duty to disclose

material facts purportedly omitted.  This duty generally arises

only where there is a fiduciary relationship between the parties."

Taylor v. S. Farm Bureau Cas. Co., 954 So. 2d 1045, 1049 (Miss.

Ct. App. 2007) (citations omitted).  In their complaint,

plaintiffs do allude to a fiduciary duty between them and

defendants, claiming that they "reposed their trust and confidence

in the Defendants."  However, under Mississippi law, "[a]s a

general rule, debtors and creditors are not in a fiduciary

relationship, absent limited circumstances[,]" Frye v. American

General Finance, Inc., 307 F. Supp. 2d 836, 843 (S.D. Miss. 2004)
(citing Gen. Motors Acceptance Corp. v. Baymon, 732 So. 2d 262,
270 (Miss. 1999)), and plaintiffs have alleged no *facts* to support
the existence of a fiduciary relationship.  A conclusory
allegation that they reposed trust and confidence in the
defendants is not a substitute for actual facts supporting finding
that a fiduciary relationship existed.  Plaintiffs have stated no
claim for fraudulent misrepresentation.

Fraudulent Conveyance:

Plaintiffs allege that their "signatures on the modification
program documents were obtained by fraudulent means and, as such,
any foreclosure resulting from their rejection for the
modification program would constitute a fraudulent conveyance."
This claim is due to be dismissed.  As the movants note, "statutes
invalidating fraudulent conveyances are designed to prevent
debtors from putting their property which is available for the
payment of their debtors beyond the reach of their creditors."
Barbee v. Pigott, 507 So. 2d 77, 84 (Miss. 1987).  See also Kidd
v. Kidd, 210 Miss. 465, 470, 49 So. 2d 824, 826 (Miss. 1951)
(explaining that "[t]o bring a case within the terms of the
[fraudulent conveyance] statute there must be a creditor to be
defrauded, a debtor intending to defraud, and a conveyance of
property which is appropriable by law to the payment of the debt
due.") (internal quotation marks and citation omitted).  As

defendants are not debtors, plaintiffs have not stated a plausible

claim for "fraudulent conveyance."  Furthermore, and in any event,

plaintiffs have failed to identify with the requisite

particularity the "fraudulent means" by which their signatures on

the modification documents were obtained.  See Walton v. Walton,

52 So. 3d 468, 473 (Miss. Ct. App. 2011) (observing there was "no

way" a plaintiff who failed to plead his claim of fraudulent

conveyance with particularity could prove the claim, making the

claim frivolous).

    Rescission and Cancellation:

    Plaintiffs allege that "all transactions between" them and

defendants "were vitiated by fraud" and that therefore, they are

entitled to recision and cancellation of the note and deed of

trust.  Again, plaintiffs have failed to state a claim for relief

as they have failed to plead any claim for fraud with

particularity and thus have identified no basis for rescission or

cancellation.

    Unjust Enrichment:

    Plaintiffs allege that defendants "have unjustly enriched

themselves in the course of acting and/or failing to act in the

manner set forth in Counts One through Nine ... to the detriment

and at the expense of [plaintiffs]."

        "'Unjust enrichment' is a 'modern designation for the
        doctrine of quasi-contracts.'  The basis for an action
        for 'unjust enrichment' lies in a promise, which is

> implied in law, that one will pay to the person entitled
> thereto [that] which in equity and good conscience is
> his." <u>Bradley v. Kelly Bros. Contractors Inc.</u>, 117 So.
> 3d 331, 338 (¶ 28) (Miss. Ct. App. 2013) (citation
> omitted).  Stated differently, "[u]njust enrichment only
> applies to situations where: [(1)] there is no legal
> contract and [(2)] 'the person sought to be charged is
> in possession of money or property which in good
> conscience and justice he should not retain but should
> deliver to another.'" <u>Langham v. Behnen</u>, 39 So. 3d 970,
> 976(¶ 14) (Miss. Ct. App. 2010) (citation omitted).

<u>SKL Investments, Inc. v. Hardin</u>, — So. 3d —, 2014 WL 6433444, at *3 (Miss.  Ct. App. Nov. 18, 2014).  Plaintiffs cannot state a claim for unjust enrichment here because they had a legally binding contract for the payment of their mortgage loan.  While they allege that their payments have not been properly credited to their account, they do not allege that they have paid more than they owe on the note.  Accordingly, this claim will be dismissed.

<u>Breach of Implied Covenant of Good Faith and Fair Dealing:</u>

The Mississippi Supreme Court has held that

> every contract contains an implied covenant of good
> faith and fair dealing in performance and enforcement.
> <u>Morris v. Macione</u>, 546 So. 2d 969, 971 (Miss. 1989).
> "Good faith is the faithfulness of an agreed purpose
> between two parties, a purpose which is consistent with
> justified expectations of the other party.  The breach
> of good faith is bad faith characterized by some conduct
> which violates standards of decency, fairness, or
> reasonableness." <u>Cenac v. Murry</u>, 609 So. 2d 1257, 1272
> (Miss. 1992).  Bad faith, in turn, requires a showing of
> more than bad judgment or negligence; rather, "bad
> faith" implies some conscious wrongdoing "because of
> dishonest purpose or moral obliquity." <u>Bailey v.
> Bailey</u>, 724 So. 2d 335, 338 (Miss. 1998).

13

<u>Univ. of Southern Miss. v. Williams</u>, 891 So. 2d 160, 170-71 (Miss. 2004).  "[D]efendants are not required to do more than the contract requires to escape liability for breach of the covenant of good faith and fair dealing."  <u>Baldwin v. Laurel Ford Lincoln-Mercury, inc.</u>, 32 F. Supp. 2d 894, 899 (S.D. Miss. 1998).  Further, a lender does not violate the covenant of good faith by "enforc[ing] the remedies available to it upon the borrower's default."  <u>Id</u>.

    In their complaint, plaintiffs vaguely allege that when entering into the loan modification program, they reasonably believed the terms of the program were as represented to them by defendants and that defendants "breached their duty of good faith and fair dealing ... by evading the spirit of the transaction in committing acts of fraud against [plaintiffs] and failing to perform as was represented to [plaintiffs]" and by failing "to disclose the true nature of the modification program..."  Yet defendants' offering plaintiffs the opportunity to apply for a loan modification was not part of their performance of plaintiffs' loan agreement.  Under that agreement, defendants were under no duty to plaintiffs to modify their loan or to consider them for loan modification; and upon plaintiffs' default under the mortgage contract, defendants were entitled to foreclose.  "Courts have consistently recognized that unless the loan agreements themselves require the lender to restructure a loan, a lender has no legal

14

duty to negotiate a restructure and hence does not violate its
duty of good faith and fair dealing by refusing to negotiate at
all and to instead enforce the remedies available to it upon the
borrower's default." <u>Rosemont Gardens Funeral Chapel-Cemetary,
Inc. v. Trustmark Nat. Bank</u>, 330 F. Supp. 2d 801, 810 (S.D. Miss.
2004).  Accordingly, plaintiffs' claim against the movants for
breach of the implied covenant of good faith and fair dealing will
be dismissed.

<u>Negligence</u>

Plaintiffs declare in their negligence count that defendants
"were guilty of gross negligence in doing and/or omitting to do
the acts set forth hereinabove."  However, as the movants
correctly point out, plaintiffs' pleading does not "set forth" any
basis for a negligence claim and hence fails to state a plausible
claim for negligence.

<u>Consumer Loan Broker Act:</u>

Plaintiffs allege that defendants "failed to account for all
monies received by them in violation of" the Mississippi Consumer
Loan Broker Act, Miss. Code Ann. § 81-19-23(1)(j).  The cited
provision states, "(1) No consumer loan broker may: ... Fail to
disburse funds in compliance with written agreements or to account
for all monies received and disbursed...."  Miss. Code Ann.
§ 81-19-23(1)(j).  The act defines a "consumer loan broker" as "a
person not otherwise exempt from this chapter who, for

compensation from borrowers, finds and obtains consumer loans or credit cards for borrowers from third party lenders."  Miss. Code Ann. § 81-19-3(3).  Plaintiffs do not allege that any defendant is a "consumer loan broker" within the contemplation of the statute. Moreover, "banks" – and both Chase and Deustche are "banks" – are expressly exempt from the Act.  See Miss. Code Ann. § 81-19-7(a).

Mississippi Mortgage Consumer Protection Act:

Plaintiffs allege that defendants violated provisions of the Mississippi Mortgage Consumer Protection Act (MMCPL), Miss. Code Ann. § 81-18-1 *et seq*.  The movants point out that this claim is due to be dismissed because, *inter alia*, in contrast to the MCLBA, there is no private right of action under the MMCPL, which vests enforcement of its provisions exclusively with the Mississippi Department of Banking and Consumer Finance.  See MMCPL Reg. § 1, www.dbcf.state.ms.us/documents/mortgage/083013safe.pdf ("These Regulations are not intended to create any private right, remedy, or cause of action in favor of any borrower or against any Licensee...").

Intentional Infliction of Emotional Distress

Under Mississippi law, a claim of intentional infliction of emotional distress requires "conduct that is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Speed v. Scott, 787 So.

2d 626, 630 (Miss. 2001) (quoting <u>Peques v. Emerson Elec. Co.</u>, 913

F. Supp. 976, 982 (N.D. Miss. 1996)).  It is manifest that

plaintiffs' allegations come nowhere near meeting this standard.

<u>Injunction</u>

Plaintiffs allege they are entitled to an injunction

"prohibiting defendants from foreclosing and/or assigning any

interests they may have in Jordans' property, ... and enjoining

the Defendants to cancel of record the Deeds of Trust at issue

herein."  However, plaintiffs have identified no valid basis for

such relief.

<u>Accounting</u>

Plaintiffs dispute the amount which Chase set forth in its

May 2014 notice as being required from plaintiffs to reinstate

their loan and avoid foreclosure.  They assert that Chase's figure

is incorrect because, among other potential errors, it fails to

account for the payments which they made while their loan

modification request was pending; and they allege they are

entitled to an accounting "of all monies paid to the Defendants

arising from the loan modification program as well as all monies

charged to the Jordans' accounts...."  In their motion, the

movants contend that plaintiffs' request for an accounting is not

well-founded.  They note that there is no general right to

accounting and contend that none of the factors identified by the

17

Mississippi Supreme Court as relevant to determining whether an
accounting is warranted, namely, "(1) the need of discovery,
(2) the complicated character of the accounts, and (3) the
existence of a fiduciary or trust relationship[,]" Re/Max Real
Estate Partners, Inc. v. Lindsley, 840 So. 2d 709, 712 (Miss.
2003), is present here.  They further note that to state a claim
for an accounting, "as with any claim arising in equity, a
plaintiff must allege an inadequate remedy at law."  Litton Sys.,
Inc. v. Frigitemp Corp., 613 F. Supp. 1386, 1389 (S.D. Miss.
1985).  See also Ward v. Life Investors Ins. Co. of Am., 383 F.
Supp. 2d 882, 886 (S.D. Miss. 2005) (stating that "[a]n inadequate
remedy at law is a necessary prerequisite to a claim for an
equitable accounting.").  And they submit that, in fact, a legal
remedy is available to plaintiffs, or at least plaintiffs have
failed to allege that a legal remedy is not available to them.
See Co-operative Oil Co. v. Greenwood Agency Co., 148 Miss. 536,
114 So. 397 (Miss. 1927) (observing that authorities are unanimous
in holding that "a sale under the power given in a mortgage or
deed of trust is a remedy at law, and will not be enjoined in
order that the mortgagor may be enabled to set up a counterclaim
against the mortgage indebtedness, unless the mortgagor shows some
special, intervening equity in his favor, such as insolvency, or
nonresidence, on the part of the mortgagee, or other ground,
which, if denied, would probably result in irreparable injury to

18

the mortgagor."); see also Hutcherson v. JPMorgan Chase Bank, N.A., No. 2:11-CV-154-KS-MTP, 2012 WL 37393, at *3 (S.D. Miss. Jan 6, 2012) (dismissing claim for accounting where plaintiff neither alleged in her complaint nor argued in briefing that she had no adequate legal remedy but rather simply alleged and argued that escrow statements provided by defendant were inaccurate, and where the plaintiff did not argue or demonstrate that she would be unable to obtain the same information through the normal discovery process when pursuing a legal remedy).  For these reasons, plaintiffs' claim for an accounting will be dismissed.

Conclusion

Based on all of the foregoing, it is ordered that the motion of defendants Chase and Deutsche Bank for judgment on the pleadings is granted.

SO ORDERED this 9th day of December, 2014.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE